UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Viseon, Inc.,

Plaintiff,

v.

VTEL Corporation,

Defendant.

Civil No. 01-1130 JMR/FLN

**REPORT AND RECOMMENDATION**

Robert Edell, Esq., and Erik Swenson, Esq., for Plaintiff.
Tracie Baubie, Esq., and Erin Lisle, Esq., for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 7, 2001, on Defendant's Motion for Partial Summary Judgment of Non-Infringement [#14]. The matter was referred to the undersigned for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons which follow, this Court recommends that Defendant's motion be granted.

## I. BACKGROUND

This case arises from commercial strife between competitors in the video teleconferencing systems manufacturing business. The dispute centers on the patenting of their respective video teleconferencing devices.[1]

[1] Video teleconferences are essentially telephone calls with a video image of the participants, typically displayed through a television. VTEL's Galaxy Teleconferencing System ("Galaxy"), the accused product, essentially uses a camera to capture images of participants, and an integrated computer system and interface housing to communicate with other video conferencing systems through a digital interface.

FILED 4-9-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Typically, commercially available video teleconferencing systems operate by digitizing audio and video signals and transmitting those signals through a network to establish a video teleconference through other systems. Digitizing and compression/decompression of the signals is typically accomplished by a coder/decoder. After the coder/decoder digitizes the signals, the data is typically sent through a digital interface to participating systems. Manufacturers improved compatibility with other systems by complying with publicly available standardized techniques for communicating these signals, such as the H.320 and H.323.

On September 1, 1998, United States Patent No. 5,802,281 ("'281 Patent") entitled "Peripheral Audio/Video Communication System that Interfaces with a Host Computer and Determines Format of Coded Audio/Video Signals" was duly and legally issued to RSI Systems, Inc. ("RSI"). On June 6, 2000, United States Patent No. 6,073,192 ("'192 Patent") entitled "Peripheral Video Conferencing System with Control Unit that Controls Presentation of Remote Video Signal Through the Output Connector" was duly and legally issued to RSI as a continuation of the '281 Patent. On May 25, 2001, RSI merged into Viseon, Inc., ("Viseon") and all assets of RSI, including the '281 Patent and the '192 Patent, were transferred to Viseon.

On June 22, 2001, RSI filed this lawsuit, claiming VTEL's Galaxy System infringed and continues to infringe both the '281 Patent and the '192 Patent. On July 25, 2001, a First Amended Complaint was served on VTEL, indicating that Viseon had acquired RSI's assets, including the '281 Patent and the '192 Patent. On August 13, 2001, VTEL answered the First Amended Complaint by denying infringement of the '281 Patent and the '192 Patent and seeking declaratory relief that: (1) VTEL's Galaxy System did not infringe the '281 Patent and the '192 Patent; and (2) that the '281 Patent and the '192 Patent are invalid and unenforceable.

On September 13, 2001, VTEL filed the instant Motion for Partial Summary Judgment of Non-Infringement. On October 4, 2001, Viseon served its response to VTEL'S Motion for Partial Summary Judgment conceding that VTEL's Galaxy System does not infringe the '281 Patent. Therefore, the only issue before this court are the arguments pertaining to the '192 Patent.

As noted, the '192 Patent was issued on June 6, 2000, and was issued from Application Serial No. 08/302,108, which was filed on February 5, 1998. Generally, the '192 Patent claims "a peripheral video conferencing system [that] is housed in a peripheral housing and adapted for communication with an analog or digital communication channel and a separate host computer system." Pl.'s Ex. C., '192 Patent, abstract.

The '192 Patent contains twenty-eight claims for a video teleconferencing system, only the first of which is an independent claim -- that is, a claim which is entirely self-contained -- while the remaining twenty-seven claims refer back to Claim 1, and incorporate its limitations. Accordingly, each of the twenty-eight claims embody the following provisos, as set forth in Claim 1:

> A system for communicating with a communication channel, comprising:
>
> a housing;
>
> a source receive unit that receives a source audio signal and a source video signal;
>
> a local transmission unit that selectively transmits a coded source audio signal and a coded source video signal to either one of an analog or a digital communication channel;
>
> a local receive unit that receives a coded remote audio signal and a coded remote video signal transmitted over the either one of the analog or the digital communication channel;
>
> an output interface, comprising an output connector, that communicates the remote video signal between the local receive unit and the output connector; and

> a control unit that controls the presentation of the remote video signal through the output connector;
>
> wherein the source receive unit, local transmission unit, local receive unit, and output interface are respectively disposed in the housing.

See Def.'s Ex. A-1, 23: 44-46. The disputed limitations of the '192 Patent relevant to this motion is the limitation that reads:

> a *local transmission unit* that selectively transmits a coded source audio signal and a coded source video signal to either one of an analog or a digital communication channel.

Id.; (emphasis added).

VTEL contends that all the claims of the '192 Patent require a local transmission unit that can selectively communicate over either a digital or an analog communication channel. Consequently, properly construed, in light of the specification, the file history and the claims of the now-discredited '281 Patent, this limitation clearly requires that both analog and digital interfaces be present, otherwise, the unit cannot select between an analog or digital communication channel. Given this construction, VTEL seeks partial summary judgment of non-infringement because its Galaxy System only uses an exclusively digital interface and does not include an analog interface for an analog communication channel.

Viseon opposes the Motion on the grounds that the claims of the '192 Patent do not require both an analog interface and a digital interface as argued by VTEL -- they only require that an infringing system be capable of transmitting over both an analog or a digital communication channel and never employ the term "analog interface." Viseon contends that although VTEL argues that its Galaxy system does not infringe the '192 Patent because it only has a digital interface, it does support

the H.323 videoconferencing standard which hypothetically allows it to send or transverse audio and video signals over an analog network. In other words, Viseon argues that VTEL infringes on at least Claim 1 of the '192 Patent because the Galaxy system **is hypothetically capable of "eventually"** transversing an analog communication channel.

## II. ISSUE

It is undisputed by VTEL's Galaxy system does not have an analog interface. Consequently, whether the Galaxy system infringes on Viseon's product turns on the construction given to the aforementioned disputed limitation in Claim 1 –specifically, whether the term "unit" also means an analog interface that transmits analog signals over an analog communication channel. If the limitations are construed as VTEL contends they should be, then the Galaxy System lacks the transmission unit recited in Claim 1 because it employs an exclusively digital interface and the motion must be granted. Alternatively, if the terms are construed as Viseon argues they should be, then Claim 1 would not require an "analog interface" but merely the capability of transversing an analog communication channel, which the Galaxy System is capable of doing and VTEL's motion should be denied.

## III. STANDARD OF REVIEW

It is well settled that the same summary judgment standard is to be applied, in motions involving Patent claims, as is applicable in other actions. See Union Carbide Corp. v. American Can Co., 724 F.2d 1567, 1571 (Fed. Cir. 1984); Itron, Inc. v. CellNet Data Systems, Inc., 34 F. Supp.2d 1135, 1138 (D. Minn. 1999), citing Avia Group Int'l, Inc., v. L.A. Gear California, Inc., 853 F.2d 1557, 1661 (Fed. Cir. 1988). Irrespective of the context in which the motion arises, summary judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural

shortcut when there are no issues which require the unique proficiencies of a jury in weighing the evidence, and in rendering credibility determinations. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The Eighth Circuit Court of Appeals has held that summary judgment is appropriate, when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See Carter v. St. Louis Univ., 167 F.3d 398, 400 (8th Cir. 1999); Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998).

Fed. R. Civ. P. 56(e) makes clear that once the moving party files a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must produce significant probative evidence demonstrating that there is a genuine issue for trial." Fed. R. Civ. P 56(e); see also, Anderson, supra at 256; Chism v. W.R. Grace & Co., 158 F.3d 988, 990 (8th Cir. 1998). Moreover, the movant is entitled to summary judgment where the non-moving party has failed to "establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp., supra at 322; see also, Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998); Mayard v. Hopwood, 105 F.3d 1226, 1228 (8th Cir. 1997). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial." Celotex Corp., supra at 323; see also, Bell Lumber and Pole Co. v. U.S. Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

## IV. LEGAL ANALYSIS

Patent infringement occurs when a device, that is literally covered by the claims of an existing patent, or is equivalent to the claimed subject matter, is made, used, or sold, without the authorization of the patent holder, during the term of the patent. See Title 35 U.S.C. § 271; Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1476 (Fed. Cir. 1998). When the domestic production, use, or sale of an accused device is not at issue, then, to show infringement of a patent, a patentee need only "supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim." Seal-Flex, Inc. v. Athletic Track and Court Const., 172 F.3d 836, 842 (Fed. Cir. 1999). Infringement is a factual inquiry and the standard for proving infringement is by a preponderance of the evidence. See Streamfeeder, LLC v. Sure-Feed Systems, Inc., 175 F.3d 974, 981 (Fed. Cir. 1999); San Huan New Materials High Tech., Inc. v. Int'l Trade Com'n, 161 F.3d 1347, 1357 (Fed. Cir. 1998).

Whether an accused product infringes a patent claim involves a two step analysis in which the first step is determining the meaning and scope of the patent claims asserted to be infringed and the second step is comparing the properly construed claims to the device accused of infringing. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996); Cordis v. Scimed Life Systems, Inc., 982 F. Supp. 1358, 1363 (D. Minn. 1997). A patent owner may prevail on a claim of infringement on one of two theories: (1) literal infringement; or (2) the doctrine of equivalents.

**A. VTEL's Galaxy System Does Not Literally Infringe on the '192 Patent**

Generally, to show literal infringement, a patentee must prove that "every limitation recited in the claim is found in the accused device, i.e., the properly construed claim reads on the accused device exactly." Cole v. Kimberly-Clark Corp., 102 F.3d 524, 532 (Fed. Cir. 1996); see also, Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1539 (Fed. Cir. 1991)("the failure to meet a single limitation is sufficient to negate infringement of the claim."). As noted earlier, in an infringement analysis, we must construe the claims that are alleged to be infringed, and then compare those properly construed claims to the allegedly infringing device. Consequently, we begin with a construction of Claims 1 of the '192 Patent.

**1. Claim Interpretation**

The construction of patent claims is a legal determination, exclusively within the province of the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 391 (1996). See also, Cybor v. FAS Technologies, Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (stating that questions of construction are questions of law for the Judge); Personalized Media Communications, LLC v. Int'l Trade Com'n, 178 F.3d 1312, 1999 WL 13384 *2 (Fed. Cir. 1999) ("[T]here are no facts underlying claim interpretation which must be viewed in the light most favorable to the non-moving party."). The construction of patent claims requires an examination of the intrinsic record evidence, which includes: (1) the patent itself, including the claims; (2) the specification; and (3) the prosecution history. See Burke, Inc., v. Bruno Indep. Living Aids, Inc., 183 F.3d 1334, 1339 (Fed. Cir. 1999). This evidence is "the most significant source of legally operative meaning of disputed claim language." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Additionally, "[t]he court may receive extrinsic evidence to educate itself about the invention and

the relevant technology, but the court may not use extrinsic evidence to arrive at a claim construction that is clearly at odds with the construction mandated by the intrinsic evidence." Karlin Tech., Inc. v. Surgical Dynamics, Inc., 177 F.3d 968, 971 (Fed. Cir. 1999).

"Claim interpretation begins with the language of the claim itself." National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc., 166 F.3d 1190, 1195 (Fed. Cir. 1999). The terms of a claim should be given their ordinary meaning unless the inventor intended that the terms should be construed otherwise. See Karlin Tech. Inc., supra at *3; York Prods., Inc., v. Central Tractor Farm & Family Ctr., 99 F.3d 1568, 1572 (Fed. Cir. 1996). Usually, the specification is dispositive in claim construction, as "it is the single best guide to the meaning of a disputed claim term." See Wright Medical Tech., Inc., v. Osteonics Corp., 122 F.3d 1440, 1443 (Fed. Cir. 1997). As noted, a Court may consider extrinsic evidence, such as expert testimony or dictionaries "to aid the court in coming to a correct conclusion as to the true meaning of the language employed in the patent." Markman v. Westview Instruments, Inc., 52 F.3d at 1080. However, the Federal Circuit has cautioned against excessive reliance on such extrinsic evidence because, to permit the public record to be altered or changed by extrinsic evidence would make the right of the public to rely on that record in designing around existing patents meaningless. See Vitronics Corp., supra at 1583.

In the instant case, the Parties agree that we need not look beyond the aforementioned limitation in Claim 1 in construing the '192 Patent. Specifically, we are concerned with the limitation providing that the device contains:

> a local transmission unit that selectively transmits a coded source audio signal and a coded source video signal to *either one of an analog or a digital communication channel.*

Claim 1 undisputedly provides that an infringing system must entail a transmission unit

disposed of in a housing that is capable of selectively transmitting audio and video signals over either an analog or digital communication channel. Applying the plain meaning of the words in Claim 1, the transmission unit must be able to communicate over both the analog and digital communications channels within the recited housing. The written description generally defines the communication channels as an analog modem and an ISDN digital communication channel, but does not clearly define the transmission "unit". Consequently, this Court must examine the prosecution history, the case file and the claims of the original '281 Patent to properly interpret what the "unit" is.

Based upon this Court's examination of the aforementioned documents, the Parties' expert affidavits and the '192 Patent, we agree with VTEL and conclude that since the transmission "unit" must include all of the functionality for communicating over both analog and digital communication channels ("dual mode"), it must include both a digital and analog communication *interface* otherwise it could not selectively transmit or receive analog signals. Viseon clearly confirmed this interpretation during prosecution of the '192 Patent by using the terms "unit" and "interface" interchangeably and distinguishing prior art having only a digital interface in order to obtain approval of the dual mode limitations in Claim 1.

Specifically, the prosecution history is replete with numerous examples in which both Viseon and the Patent Examiner used the terms "interface" and "unit" interchangeably. For example, Claim 1 of the original '281 Patent provides for a "*local transmission interface*" that "*selectably transmits*" source audio and video signals to "either one of an analog or digital communication channel" and a "*local receive interface*" that receives audio and video signals over "either one of the analog or the digital communication channel." See Def's Ex. A. Identical in almost every respect, the only

difference between the relevant limitations recited in Claim 1 of the '281 Patent and Claim 1 of the disputed continuation '192 Patent is that the word "interface" is replaced by "unit" and "selectably" is replaced by "selectively." See Def.'s Ex. C. Another example, Figure 6 of the '192 Patent, specifies that it is merely an illustration of various "connectors, jacks, and transceivers comprising the output, input, and communication channel *interfaces* of a novel . . . communication system." Def.'s Ex. C at 3:40-45 (emphasis added). Yet another example is a segment of the written description providing that the "local processor 186 process the source video signal . . . [and] transmits the source video signal 78 to the communication channel *interface* panel 170 for transmission over the communication channel." Def.'s Ex. C, 8:45-50 (emphasis added). These examples clearly support the contention that the term "unit" and "interface" are interchangeable or that the term "unit" includes an interface within its meaning.

It is also significant that the accused device was granted a separate patent and that the Patent Examiner, before granting the '192 Patent, had carefully reviewed the prior art and rejected all pending claims, relying on another patent issued to Shibata et al.[2] In a response to the Patent Examiner's decision, Viseon recognized that the Examiner considered the terms "interface" and "unit" to have similar scope, with the term "unit" including an "interface" within its meaning and argued for allowance of Claim 1 by substantially amending the pending claims and distinguishing the prior art, Shibata et al., as exclusively employing a digital communication channel as opposed

---

[2] Shibata et al. discloses a video conferencing system that interfaces with a communication channel and with a personal computer

to the '192 Patent's dual analog and digital communication channel capability.[3] See Def.'s Ex. D-4-6. The fact that the '192 Patent was issued over the prior art is clearly relevant in that it shows that: (1) the Patent Examiner considered the terms to have a similar scope; and (2) the differences between the accused device and the '192 Patent were substantial or the Patent Examiner would have denied Viseon's claims. See Roton Barrier, Inc. v. Stanley Works, 79 F.3d 1112, 1128 (Fed. Cir. 1996).

Consequently, in reading and interpreting Claim 1 in light of the prosecution history, plain language and written description of which it is a part, this Court concludes that the term "unit" is interchangeable with the term "interface" and thus the system described in Claim 1 of'192 Patent requires an analog interface.

**2. Literal Infringement**

As noted earlier, to show literal infringement, a patentee must prove that "every limitation recited in the claim is found in the accused device, i.e., [that] the properly construed claim reads on the accused device exactly." Cole v. Kimberly-Clark Corp., 102 F.3d 524, 532 (Fed. Cir. 1996); see also, Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1539 (Fed. Cir. 1991)("the failure to meet a single limitation is sufficient to negate infringement of the claim.").

Having employed this dual mode capability to distinguish Shibata et al. as exclusively

---

[3] Specifically, Viseon argued that:

> Shibata et al. teaches that the network *interfacing* communications network control unit 9 is connected to a digital communications network through D/R 10. Shiabta et al. does not disclose or suggest a local transmission unit or a local receive unit that respectively transmits and receives audio and video signal information over either one of an analog or a digital communication channel as required in the Applicants' amended claim 54.

Def.'s Ex. D-5 at 5-6 (emphasis added).

employing a digital communication channel only, this Court concludes that Viseon cannot now read claims on systems that ***exclusively*** employ digital communication channels. It is undisputed that VTEL's Galaxy System communicates exclusively over a digital interface and is incapable of selectively communicating data over an analog interface. Therefore, without the capability to communicate over an analog interface, the Galaxy System lacks a limitation recited in Claim 1 and does not literally infringe the dual mode claims in the '192 Patent.[4] See General Mill, Inc., v. Hunt-Wesson, Inc., 103 F.3d 978, 983 (Fed. Cir. 1997) (holding that even if one element is absent from the accused device, then infringement is lacking).

**B. VTEL's Galaxy System does not Infringe on the '192 Patent Under the Doctrine of Equivalents**

Courts apply the doctrine of equivalents to prevent "fraud on the patent" by finding infringement where a party steals the heart of an invention by making insubstantial changes that avoid the literal scope of the claims. Courts frequently use the function-way-result test, namely, "whether the substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role not substantially different from the claimed element." Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997).

Here, because VTEL's Galaxy System does not have an analog interface, it cannot be said

---

[4] Viseon's contention that Claim 1 does not require an "analog interface" but merely the capability of transversing an analog communication channel, which capability VTEL's Galaxy system includes, as it supports the H.320 and H.323 video conferencing standard is without merit. We do not accept that if digital output produced by a video-conferencing system is somewhere later converted into an analog signal, then the system has selectively transmitted through an analog communication channel because doing so would render the location of the analog interface of the accused system obsolete and is contrary to the written description and prosecution history discussed above.

to infringe under the Doctrine of Equivalents because the complete absence of a claim element from the accused device precludes a finding of equivalence.

Consequently, in viewing the evidence in the light most favorable to Viseon, this Court concludes that with respect to non-infringement there are no genuine issues of material fact that are appropriately left for the jury to resolve and recommends that VTEL's Motion for summary judgment be granted.

## V. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion for Partial Summary Judgment of Non-Infringement [#14] be **GRANTED**.

DATED: April 9, 2002

FRANKLIN L. NOEL
UNITED STATES MAGISTRATE JUDGE

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within 10 days a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and

it is therefore not appealable to the Circuit Court of Appeals.